━━━ o ⊙ o ━━━

TRIMBLE *v.* THE STATE.

The act of the legislature creating two jury districts, and appointing two different places to hold the district court in Lee county, is not unconstitutional. Kinney J., *contra.*

In examining a juror as to his qualification he stated, that "he had formed and expressed an opinion from the rumor or report he had heard in his neighborhood, soon after the murder was committed; that he had no acquaintance with the defendant, no ill will or prejudice against him; that he had no personal knowledge of the circumstances of the case; that he had never heard any of the testimony or conversed with any of the witnesses; that his opinion was conditional, that if what he had heard was true, he had formed an opinion, and if not true he had formed none;" held that such a juror is incompetent.

*Error to Lee District Court.*

*Opinion by* WILLIAMS, C. J. Alexander Trimble was indicted at the September term of the district court at Keokuk, in Lee county, A. D. 1849, for the murder of Richard Wells. He was found guilty of manslaughter by the

Trimble *v*. The State.

jury, and sentenced by the court upon the verdict, to pay a fine of one thousand dollars, to undergo confinement in the penitentiary for the term of three years, and to pay the costs of prosecution. When the cause was called, for trial, the counsel for the prisoner made three challenges to the array of grand and petit jurors respectively. The challenges were overruled by the court. Having proceeded with the trial so as to call several petit jurors to the box, upon examination as to their legal qualification to sit as jurors in the case, they were challenged by the prisoner for cause. The challenge was overruled, and the jurors were sworn, and participated in making and rendering the verdict, upon which the judgment and sentence of the court were pronounced. Motions in arrest of judgment and for a new trial were made, and overruled by the court, before judgment and sentence.

The following are the principle assignments of error, which are relied on as ground of reversal:

1. The court erred in overruling the prisoner's challenges to the array of grand and petit jurors who found the indictment, and tried the cause; the venue for summoning both, being illegal.

2. The court erred in not allowing defendant's challenges for cause of jurors, who had each formed and expressed an opinion as to the guilt or innocence of the prisoner.

The first assignment involves the question of legal validity as to selection, summoning and qualifications of the jurors, grand and petit.

The objection involves the constitutionality of the proceeding as conflicting with the organization of the counties of the state for judicial purposes. In order to the proper disposition of this question, we will refer to the provisions of the constitution, and the acts of the legislature affecting the subject under consideration.

The act of January 24th, 1848, entitled "An act fixing the times and places of holding the district courts in the first judicial district," enacts that the times and places of holding the court, shall be, "In the county of Lee, at Fort

Madison, on the first Monday in April and first Monday in November; at the city of Keokuk, in said county of Lee, on the third Monday in February and third Monday in September; *Provided,* That the authorities of the city of Keokuk, shall provide free of charge, the necessary rooms for holding court at said county, (city)."

Sec. 2d. provides, that "the said district courts in the county of Lee, shall have concurrent jurisdiction in all civil causes in said county, except appeals from justices of the peace in the city of Keokuk, and in the townships of Jackson, Des Moines and Montrose."

Sec. 3d., that the district court at the city of Keokuk, shall have exclusive jurisdiction in all criminal causes, and in all appeals in civil causes from justices of the peace in the said city of Keokuk, and in the townships of Jackson, Des Moines and Montrose in said county of Lee."

Provision is then made by the act, by which, jurisdiction in all civil and criminal matters, as by law allowable, (except those arising in the city of Keokuk, Jackson, Des Moines and Montrose townships,) within the county of Lee, is conferred upon the district court to be holden at Fort Madison. The sheriff and clerk of the district court of the county, are required to have offices at both places; and the former acts of the legislature fixing the times and places for holding the district court in Lee county are repealed. The effect of this enactment is to establish the city of Keokuk as a place for the holding of the district court in Lee county, for the transaction of judicial business within the city and the three townships named, in accordance with the terms therein specified.

It is contended by the defendant's counsel, that the venire for the summoning of the grand and petit jurors, requiring them to be taken from the city of Keokuk and the townships of Jackson, Des Moines and Montrose and not from the body of the whole county of Lee is defective in law, and in derogation of the right of the prisoner.

The right of the legislature to divide the county for judicial purposes, is denied. The judicial power of the state

Trimble *v.* The State.

is invoked to maintain the rights of the accused, as guaranteed by the law of the land, and under the constitution. It is alleged, that by confining the selection of grand and petit jurors, the accused has been curtailed in his right to have his case submitted to juries made up of qualified voters chosen from the body of the county of Lee, as the venire required that they be taken from the townships of Jackson, Des Moines and Montrose in the county of Lee.

It is clearly the province of the legislature, as it is their duty, to provide for the municipal convenience and welfare of the counties of the state in judicial policy. Public economy, as well as private interests, in view of the increase of population and business, may justly require change, productive of easement to the community. Judicial or other governmental arrangement adapted to the condition of a new state, when population is sparse and business transactions are few, and unimportant, may after a lapse of time, and increase and improvement, prove inadquate to the wants of the public. When such is the case, it is proper, indeed it becomes necessary, that the law should be changed to answer the demands of popular advancement. To effect this, the legislative power may be invoked and exercised. This power is limited, and in a measure regulated by the constitution of the state. The municipal affairs of the state are to be regulated by the common law, which remains unchanged by legislative enactment, when exercised without violation of the constitution. The law in question, is confined in its operation to Lee county, and is so far local. Then how does this act of the legislature establishing the two courts, and dividing Lee county for judicial purposes stand, in view of the constitution, in its effect upon the rights of the accused.

The constitution of this state provides, "That the right of trial by jury, shall remain inviolate." It secures to the accused, a speedy trial by an impartial jury. That he shall be informed of the accusation against him, &c. By section 11th of the bill of rights, it is declared, that "no person shall be held to answer for a criminal offense, unless

on presentment or indictment *by a grand jury;* except in cases cognizable by justices of the peace, or arising in the army or navy, or in the militia, when in actual service in time of war, or public danger." This being the language of the constitution, has the accused been deprived of the rights thereby secured to him, by the proceeding in this case? The record shows, that the grand and petit jury consisted of the usual number of jurors, that an indictment was found and presented, and that he was held to answer thereto, and tried in the county where the offense charged was committed, by a court having jurisdiction of the case by virtue of legislative enactment. The supreme law of this state then, so far has been observed. Since the declaration of rights in 1774, the right of trial by jury has been regarded as the birthright of every citizen. Chancellor Kent in his commentaries, vol. 2d, p. 13, observes that, "It may be received as a self evident proposition, universally understood and acknowledged throughout this country, that no person can be taken or imprisoned, or disseized of his freehold, or liberties, or estate, or exiled, or condemned, or deprived of life, liberty or property, unless by the *law of the land,* or the judgment of his peers." The learned jurist then proceeds to say, that "the words *by the law of the land,* as used in Magna Charta in reference to the subject, are understood to mean *due process of law;* that is by indictment or presentment of good and lawful men, and this says Lord Coke, is the true sense and exposition of these words." For aught that is apparent of record, on this point, the accused was tried by *due process* of law, the jurors, grand and petit, were his peers of the vicinage, "good and lawful men," possessing the requisite qualifications. They were resident voters of the county of Lee. In this respect, there is no valid objection to either array. But it is urged, that the accused had a right to have a grand and petit jury selected and summoned from the body of the county of Lee, and therefore the venire is defective, being confined in its operation to the townships of Jackson, Des Moines and Montrose, which

compose only a part of the county. This objection goes directly to the constitutional validity of the legislative enactment, by which the county is divided for judicial purposes; the venire being in accordance with the spirit of that act.

The 2d section, of the 12th article of the constitution is cited as restricting the legislature, so as to invalidate the act establishing the court at Keokuk. By this section, it is declared, that "no *new county* shall be laid off hereafter, nor old county reduced to less contents, than four hundred and thirty two square miles." We cannot see how this section of the constitution can, by any reasonable construction, be made to apply to the point here raised. Lee county is one of the oldest counties in the state, organized before the constitution was adopted, and is the largest and most populous. The act in question, does not reduce, or in any way change it territorially. Its square miles in number are as they were before this act was passed. The act only affects the internal and municipal organization and interests of the county. This the legislature had the power to regulate, upon the request of the inhabitants, under the restriction heretofore designated.

The townships of Jackson, Des Moines and Montrose, are within the county of Lee, and the jurors having been selected from them, were taken as required by law, from the body of that county and not of another. "The body of the county," is to be considered as expressing the county limit, so as to prevent the selection of jurors residing without the county. We do not understand that the law requires jurors to be taken from every and all portions of the county. If so, by what rule are the fractions or subdivisions of the county for this purpose designated? The three townships which are set apart for judicial purposes in establishing the court at the city of Keokuk, contain a population amply sufficient for the procurement of a proper number of "good and lawful men," to constitute juries for the trial of criminal and civil causes. If by reason of great excitement or otherwise, prejudice should exist

51

against a party, so as to prevent a fair and impartial trial, the statute has provided a remedy by allowing a change of venue to another county.

By this act, all previous enactments passed for establishing the times and places of holding the district court of Lee county, are expressly repealed in the seventh section, and all acts providing for the judicial organization of that county with which the act conflicts, are also repealed by operation of law. This is not, therefore, an interference with any rights secured to the accused by the provisions of the constitution. There is no constitutional provision, which prohibits the establishment of the additional time and place for holding the district court in and for Lee county. The decision of the district court in this matter was therefore correct.

But it is contended for the accused, that the court erred in not allowing his challenge for cause to jurors, who had formed and expressed an opinion.

The bill of exceptions shows, that on proceeding to trial several jurors were called to the box, who being sworn to answer questions touching their qualifications as jurors, answered that they had *formed and expressed* an opinion as to the guilt or innocence of the prisoner, whereupon the prosecuting attorney having refused to challenge them, they were challenged for cause by the prisoner's counsel, and requested to leave the box. Whereupon the court interposed, saying that it was improper to make challenges in that way, and ordered the clerk to call the jurors singly, which being done, Peyton Dawson, one of the jurors called, stated "that he had formed and expressed an opinion from the rumor or report he had heard in his neighborhood, soon after the murder was committed; that he had no acquaintance with the defendant, no ill will or prejudice against him; that he had no personal knowledge of the circumstances of the case; that he had never heard any of the testimony or conversed with any of the witnesses; that his opinion was conditional; that if what he had heard was true, he had formed an opinion; if what he had heard

Trimble *v.* The State.

was not true, he had formed none."' Six other jurors being examined, made the same statement. After this examination by the court, the counsel for the prisoner still urged his right to challenge the jurors for cause. The court overruled the challenge, and decided that the jurors were competent. Whereupon they were sworn in the case, and participated in making the verdict.

To this action of the court, the counsel for the prisoner excepted.

The right of the accused "to a speedy trial by an impartial jury," is secured by the constitution. It is therefore, important in this case, to ascertain from the record, whether the jurors to whom the prisoner objected, were "impartial" in the proper legal sense. By examining the origin of the trial by jury, and tracing its history through the progression of civil and political advancement, to the enlightened spirit which pervades civilization, at the present day, we find that reason directed by truth, has done much to render it a shield to the citizen against tyranny and oppression; whilst by it, the observance of law and justice are enforced. It has kept pace with the progression of political liberty. In England, during the reigns of James I. and Queen Anne, it was questioned whether an offender charged with a capital felony, was entitled to examine witnesses on oath in his favor. In the 7th year of the reign of William III., witnesses were first allowed to prisoners on trials in certain cases. In the first year of Queen Anne; the right was extended to all cases of treason and felony. 4 Black. Com., 360,

Counsel was not allowed to the prisoner in case of high treason till the seventh of William III. It is a feature of English jurisprudence now, that where a man is indicted for a capital felony, he is not allowed counsel on the question of guilty or not guilty. But strange as these facts may seem to us in the United States at this day, they are scarcely more so, when properly considered, than that at this period of the world, the English judiciary should declare, that a juror who had formed and expressed an opin-

ion against a prisoner at the bar for trial, should not be challenged for that cause. In that country, and others similarly constituted in government, where kingly power still is struggling against the light of justice, and the liberty and equality of man as a citizen; where the government is enthroned above and against the people, and made by law independent of their will, such a doctrine might not seem strange. In this country, however, such is the spirit of our national and state constitutions and our statutes, that the citizen stands for security on a higher and more certain position to maintain his rights when arraigned before his country's tribunal. In this country, the protection and elevation of the citizen, is the strength and security of the government.

In disposing of the question before us we will then be governed by the light of American decisions, which best accord with the spirit of our constitution. Then, is it good cause for a principal challenge to a juror, in a capital case, that he has *formed* and *expressed* an opinion as to the guilt or innocence of a prisoner on trial, when that opinion has been formed on facts gathered from rumor, and believed by him so as to bring his mind to a conclusion on the subject? In the case of *The People* v. *Vermelyea* 7 Cowen, 121, the learned judge who delivered the opinion of the court says: "It is admitted that every citizen whether arraigned for crime or impleaded in a civil action is entitled to a trial by a fair and impartial jury. The trial by jury is justly considered an invaluable privilege, but it would become a mockery if persons who had prejudged the case, were admitted as impartial triers. All the elementary writers with the exception of Chitty lay down the proposition broadly, that if a juror has declared his opinion beforehand, it is a good cause of challenge. 1st Archbold, 181, 182. 2d Tidd, 779, 780. Bacon, (title juries E.) 5. Bull, N. P. 307. Lord Coke (1 Com. on Lit. 155, 156) says: "he ought to be least suspicious; that is to be indifferent as he stands unsworn and then he is accounted in law *liber et legalis homo:* other-

wise he may be challenged and not suffered to be sworn,"
and he proceeds to consider what is meant by standing *in-
different* "manifestly that the mind is in a state of neutral-
ity, as respects the person and matter to be tried, that
there exists no bias for or against either party in the mind
of the juror calculated to operate on him: that he comes
to the trial with a mind uncommitted, and prepared to
weigh the evidence in impartial scales." In the case
cited it is true that the opinion of Norwood, the juror, was
formed from hearing the testimony on a former trial not
from rumor as in the case at bar. But the ground upon
which he was held to be incompetent by the supreme court
was, that "He stated that, if the evidence on the second
trial should be the same as on the first, he should pro-
nounce them guilty." The point is this, that the mind of
the juror was so prepossessed, as to the case of the prison-
er, by what he had heard, that a conclusion was formed,
to remove which, other and stronger facts and circum-
stances must be presented, with such irresistible force, as
to compel him to yield his position. We cannot perceive
much difference between a juror who has formed an opin-
ion from the hearing of the evidence on a former trial,
and one who has formed it from a recital of the circum-
stances of the case, as established by rumor. In both
cases the facts are heard, and believed, the mind prepos-
sessed and an opinion formed against the accused, so con-
clusively, that it is expressed and published abroad. A
man of firmness and decision of character, who has thus
brought his mind to a conclusion and expressed his opin-
ion upon the facts of a case when not sworn, as a juror,
will not be likely to change that opinion, when acting un-
der oath, unless the evidence adduced on trial be so en-
tirely different from the facts by him learned and acted
upon, that he will be forced to it. Can such a juror be
"*impartial*" in the sense of the constitution? Is he more
open to conviction, less biased, and better prepared in
mind to hear, weigh and fairly determine upon the case
anew, than the man who stood by a former hearing and

heard the evidence? In view of the constitutional right of the accused, and of sound reason, if the one beincompetent to act as a juror, the other is also.

The courts have in this country decided that a juror who had tried a cause once would be incompetent to act as such upon a second trial. 1. G. Greene. 534.

Upon a review of the various decisions upon this and assimilated points, we hold it to be a good ground of challenge for cause to a juror, that he has formed and expressed an opinion on the question in controversy, between the parties to a suit. In cases capitally criminal, this principle should be the more strictly observed. *Blake* v. *Millspaugh*, 1 John. 316; *Pringle* v. *Hughes*, 1 Cowen 432; *Commonwealth* v. *Knapp*, 9 Pick. 499; *The People* v. *Rathbun*, 21 Wend. 542; *The Commonwealth* v. *Ruggell*, 16 Pick. 153; *The People* v. *Bodine*, 1 Denio 281.

Much reliance is placed on the fact, that the juror after stating that he had formed and expressed an opinion, upon being examined further by the court added, "that if what he had heard was true, he had formed an opinion; if what he had heard was not true, he had formed none." It is urged that his opinion was merely hypothetical; and this being the fact, that he stood indifferent. We are aware that decisions to this effect have been made, by courts entitled to high respect. But none of these cases will meet the one at bar. Here the juror had expressed a positive opinion. It does not appear to have been hypothetically expressed. That expression must have been based upon an opinion previously formed. This explanation merely amounts to a qualification, which all will admit, who have formed opinions upon what they have heard; that is if what they have heard should not prove true, their opinions might be changed. The juror who has previously formed and expressed an opinion, upon the merits of a case, cannot, when he enters the box, stand there indifferent, though that opinion be conditional or hypothetical. It is clear, that the task of removing his mental bias must devolve upon the party against whom it exists. He is not free and

uncommitted. An unconstitutional, unreasonable and therefore illegal condition is imposed upon the party whose case has been thus prejudged. He must labour under a burden from which his adversary is free. This is at variance with the spirit of our institutions.

The allegation of inconvenience to judicial proceedure, in the procurement of jurors in cases like this, where the public mind becomes excited, insomuch, that the minds of citizens are liable to be affected by rumor, cannot be received as a reason for dispensing with the observance of a right secured, and made sacred by the constitution, and which is of vital importance to the citizen. They who are in this day of civil and religious light and liberty, called to make and execute the law, should not turn back to minister to the improprieties of mankind, but rather to hold the standard of the constitution and the law, up to its true elevation, that the citizen may see it and be raised to it.

If difficulty should occur in the procurement of jurors, who will stand on the trial indifferent or impartial, the law has wisely provided for such a case, by allowing a change of venue.

Judgment reversed.

*Dissenting opinion by* KINNEY, J. Agreeing as I do, with the court upon most of the points decided in this case, yet I am compelled to dissent from the decision upon the constitutional question which is here presented. A decision upon this question was not necessary, the other points raised by the bill of exceptions being well taken, a reversal of the case was inevitable. As a decision upon the constitutionality of this extraordinary legislative act is one of deep interest to the citizens of this state, it is with me a matter of regret that so important a question should be decided against the rights of the citizen unless absolutely necessary, and then not until after full argument and the most mature reflection. The consequences of such a decision are to my mind most alarming. A wide door is opened for the legislature of this state to di-

vide every county for judicial purposes, and restrict the
selection of grand and petit jurors to a particular town-
ship, village, neighborhood or ward. Is the constitution
of Iowa so dissimilar to other constitutions? Is it so re-
gardless of those great fundamental principles of civil lib-
erty which have, ever since the formation of written con-
stitutions secured to the citizen an impartial trial by a jury
of his peers? Does it repeal that clause in the ordinance
of 1787, held in such high veneration by all jurists; and
is it possible that rights so sacred are to be enjoyed at the
will and mercy of a legislative body?

As I understand the constitution such is not the case.
The power contended for by the court has not, in my o-
pinion been delegated to the legislative branch of the gov-
ernment. I do not hesitate to say that the legislature may,
for the convenience of the people of a particular county,
pass a law by which the courts may be held in different
places in the same county: but when they attempt to con-
fine the selections of jurors within geographic limits less
than the entire body of the county, they are assuming
powers which are not conferred by the instrument which
created them.

The constitution provides: "That no person shall be held
to answer a criminal offense, unless by presentment or in-
dictment by a grand jury, &c." What was here intended
by the framers of that instrument? A body of men selected
from a *particular locality*, or confined to a prescribed *town-
ship*, to the exclusion of all the other townships of the coun-
ty? A grand jury, I have always understood to be a number
of men not exceeding twenty three, selected in such man-
ner as should be prescribed by law from the *body* of the
county, and the *body* of the *county* is the *county* at large,
over which the court has jurisdiction. But the constitu-
tion has defined the extent of each county formed or to be
formed in the state by providing, that no new county shall
be laid off hereafter, nor old county reduced to less con-
tents than four hundred and thirty two square miles. The
act of the legislature clearly violates the spirit and evident

intention of this clause of the constitution. Three townships are constituted by the law a county for judicial purposes, which in territory are less than one fourth the area prescribed by the constitution. Grand and petit jurors are to be selected from these townships alone. Indictments found and returned, individuals tried and sentenced, and judgments rendered, upon verdicts of jurors thus selected. The entire jurisdiction of the court is as completely and perfectly confined to the three trownships, as it is to any county over which the court may preside. True it is, that the legislature do not attempt by *name* to organize a county out of the townships of Jackson, Des Moines and Montrose, nor give them a name and place among the counties of the state, as a separate county organization, for this would be so flagrant a violation of the *letter* of the constitution, that it would strike the mind of every person as utterly incompatible with the provisions of that instrument. But the result in the administration of justice is the same, and the constitutional rights of the citizen no less infringed, than if such a separate county organization had been effected. The county is practically reduced, to a less number of miles than the constitutional limits, and the legislature are permitted by the decision, to pass laws which in effect produce the same results, as would that legislation which the constitution directly and in unequivocal terms forbids.

The venire for the grand jury instead of being co-extensive with the county of Lee, is confined to three townships, and when the sheriff oversteps these township lines for the purpose of serving his writ, he is as much out of his jurisdiction as though he were in another county or state. According to the construction given the law, a juror summoned from another township is no more entitled to a seat in the jury room, although he resides in the same organized county, than if he had been summoned from the adjoining state of Missouri.

The law provides, that the grand and petit jurors to serve at the district courts held at Keokuk, shall be selected from

the townships of Juckson, Montrose and Des Moines, and that grand and petit jurors to serve at the district courts held at Fort Madison in said county, shall be from the remaining townships in said county and no other.

The 2nd section provides, that the number of grand and petit jurors for each division of the district court, and the manner of ascertaining the proportion to each township and of giving notice thereof, returning, drawing &c., shall be the same for each division of said courts, or districts, as though they were *separate counties.* Thus the legislature in express terms, makes each division of the county as complete and perfect for judicial purposes, as is any constitutional county within the state. If the legislature possess under the constitution this power, then indeed have the people unconsciously by their state organization, yielded up some of their dearest rights, and the constitution instead of proving a blessing and protection, has left the door wide open for legislative oppression. If the legislature have the power to form three townships into a county for judicial purposes, confining the selection of grand and petit jurors to those townships, then they have the power to embrace in a similar law only one township, and if one township, then a particular school district. Thus an indictment instead of being indicted by impartial jurors, taken from the *body* of the *county*, may be indicted by those selected from his immediate vicinity, and the indictment found under the influence of excitement, prejudice or malice. The accused may be imprisoned upon the indictment to await his trial, and in this way unjustly deprived of those natural liberties which the constitution it would seem has vainly attempted to protect, and in the enjoyment of which he would have been secure, had the grand jury been taken from the county at large.

If the legislature possess the power contended for by the court, then that power is unlimited, and may be exercised over the smallest extent of territory in every county within this state.

But there is another and if possible, more formidable constitutional objection to this law.

The law provides, that the district court at the city of Keokuk, shall have exclusive jurisdiction in all criminal cases, and in all appeals in civil causes from justices of the peace in the said city of Keokuk, and in the townships of Jackson, Montrose and Des Moines in said county of Lee This legislation is both local and partial. The *subject matter* of the law is general and universal, and should be made so in its application. A law by which the citizen is to be tried for crime should be general, bringing within its corrective influence all the citizens of the state alike, and not partial and limited in its operations. Justice should be dispensed from all portions of the state from the same pure fountain. The individual who is indicted and tried in Lee county, ought to be indicted and tried by the same general law as the one in Dubuque county, and entitled to the same privilege and protection. All this is impossible under the law in question. While the citizens in all the other counties of the state, before they can be made to answer to a criminal charge, must be indicted by a grand jury selected from the *body* of the *county*, those of Lee are compelled to submit to a prosecution upon an indictment found by a grand jury taken from three townships of the county. While the venire for the petit jury to try those charges, is co-extensive with the county in every other county of the state, in Lee it is absolutely confined to the geographical limits of certain designated townships.

Hence law and justice are administered in Lee county in one way, and in the other counties composing the same judicial district, in another way entirely dissimilar.

Section six of the bill of rights provides, that "All laws of a general nature shall have a uniform operation." The act passed by the legislature is of a general nature. It provides for the selection of grand and petit jurors, by which persons are to be tried for the highest crimes known to our laws. Instead of being uniform and universal in its

operation upon all the citizens of the state, it is made local and partial, confined to the townships of a particular county.

Suppose the legislature had passed a law by which the crime of petit larceny should be punished in the county of Lee by imprisonment in the penitentiary, while in all the other counties, it was merely punished with confinement in the county jail, could it admit of a doubt, but that this act would be contrary to the plain and express provision of the constitution? I cannot think, that such a law would be more obnoxious than the one in question.

And it may well be doubted whether the act providing for this new and extraordinary mode of proceeding, does not infringe upon that clause of the constitution which declares "that the right of trial by jury shall remain inviolate." It appears to me, that this not only secures the right of trial, but that every citizen shall enjoy that trial according to those great distinctive features which have not only always characterized a jury trial, but which are essentially necessary to the enjoyment of the right so secured.

*J. C. Hall*, for plaintiff in error.

*Hollman & Stephens*, for the state.